IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| DELSA BROOKE SANDERSON,<br><br>Plaintiff,<br><br>vs.<br><br>WYOMING HIGHWAY PATROL,<br>STATE OF WYOMING,<br><br>Defendant. | Case No. 18-CV-016-SWS |

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

This matter comes before the Court on *Defendant's Motion for Summary Judgment* (ECF No. 30). Defendant contends Plaintiff has failed to make a prima facie case for or otherwise establish her claims and that Defendant is entitled to a judgment as a matter of law. The Court having considered the motion and the accompanying briefs and information, oral argument, and being otherwise fully advised, finds as follows:

## BACKGROUND

This case involves Title VII claims by a demoted employee against Defendant Wyoming Highway Patrol. Plaintiff is one of a small number of female troopers with the Wyoming Highway Patrol (ECF No. 36 at 1). She has been a trooper since 2007 (*id.*). Prior to May 2015, Plaintiff received numerous positive reviews for her work, was nominated for Trooper of the Year in 2014, and was given a Colonel's Commendation Award (*id.*). In May 2015, Plaintiff was promoted to Division O, the executive protective

detail, providing security to the governor and other state officials (*id.* at 2). Plaintiff was also trained as the patrol's first female K9 handler as part of this position (*id.*).

After Plaintiff's promotion, things began to change. The parties dispute whether this was a result of Plaintiff's poor attitude or discrimination and harassment. The Court will reserve specifics for the Analysis section, but generally Plaintiff alleges she was ignored, harassed, singled out for punishment, and treated poorly compared to her male colleagues (*id.* at 2-3; 36-1-36-6). She contends she complained about this "unequal treatment" to superiors several times (ECF Nos. 36 at 5-6; 36-15; 36-4; 36-9; 36-1). Conversely, Defendant alleges Plaintiff was not a good fit for the division and was insubordinate, flippant, and unprofessional (ECF No. 31 at 5). On April 15, 2016, Plaintiff was summoned to a meeting and given a letter of expectations by supervisors (ECF Nos. 1 ¶ 34; 36-3 at 41). This meeting was interrupted, and Plaintiff was called into Colonel Kebin Heller's office (ECF Nos. 1 ¶ 34; 36-3 at 49). There she was given a letter of involuntary reassignment from Division O and the K9 handler position to a Trooper II position (ECF No. 36-3 at 49). This, in addition to the loss of prestige associated with being assigned to Division O, resulted in a reduction in pay. (*id.* at 58).

Plaintiff initially filed an internal grievance, then withdrew that grievance to file a Charge of Discrimination with the Wyoming Fair Employment Program and the U.S. Equal Employment Opportunity Commission ("EEOC") (ECF No. 31-3). She received a right to sue letter on October 19, 2017 (ECF No. 1 at 12). On January 1, 2018, Plaintiff filed her complaint alleging sex[1] discrimination, hostile work environment based on sex, and

---

[1] Plaintiff uses the term gender; however, the Title VII of the Civil Rights Act uses the term sex. The Court uses the term sex to match the relevant statute.

2

retaliation (*id.* ¶¶ 46-62). Defendant filed this motion for summary judgment on October 29, 2018 (ECF No. 30). Plaintiff responded on November 13, 2018 (ECF No. 36). Oral argument was held on November 28, 2018.

## STANDARD OF REVIEW

Summary judgment is appropriate where a movant shows "there is no *genuine* dispute as to any *material* fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a) (emphasis added). "A dispute is genuine if there is sufficient evidence so that a rational trier of fact could resolve the issue either way. A fact is material if under the substantive law it is essential to the proper disposition of the claim." *Crowe v. ADT Sec. Servs., Inc.*, 649 F.3d 1189, 1194 (10th Cir. 2011) (internal quotations and citations omitted). "The movant bears the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670–71 (10th Cir. 1998). The burden then shifts to the nonmoving party to set forth specific facts showing that there is a genuine issue for trial. *Id.* "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). It is with these standards in mind that the Court reviews Defendant's Motion.

## ANALYSIS

Plaintiff's claims stem from Title VII of the Civil Rights Act of 1964. Plaintiff alleges sex discrimination, hostile work environment based on sex, and retaliation. Defendant raises five arguments in support of summary judgment: (1) Plaintiff cannot

3

establish a prima facie case for her discrimination claim because she has not shown "her demotion 'took place under circumstances giving rise to an inference of discrimination;'" (2) Plaintiff cannot establish a prima facie case on her retaliation claim because she has not shown a causal connection between the protected activity and the adverse action; (3) Plaintiff cannot show the proffered reasons for her demotion were pretextual; (4) Plaintiff failed to exhaust her administrative remedies on her retaliation claim; and (5) Plaintiff cannot establish her claim for hostile environment because she cannot show she was subject to severe or pervasive harassment based on her sex.

Because Plaintiff does not provide direct evidence of discrimination or retaliation, and because the Court's review of the record reveals none, the relevant analysis is dictated by the *McDonnell Douglas* framework.[2] "A plaintiff may prove a violation of Title VII

---

[2] Plaintiff references and utilizes both the motivating factor test and *McDonnell Douglas* framework. However, Plaintiff has not met her burden of providing direct evidence. "A mixed-motive case is not established, and the *Price Waterhouse* framework does not apply, until the plaintiff presents evidence that directly shows" discrimination played a motivating part in the employment decision at issue. *See Fye v. Oklahoma Corp. Comm'n*, 516 F.3d 1217, 1226 (10th Cir. 2008). This is referred to as the direct method but can be shown by direct or circumstantial evidence. *Id.* In the retaliation context, cases that have survived under this theory include situations where "people involved in the promotion decision expressly stated that plaintiff would not be considered due to his discrimination complaint" or where "there was testimony that a supervisor held plaintiff's EEOC filing against her, falsified and altered her performance evaluations, and misrepresented incidents involving plaintiff; and a manager testified that he relied on a misrepresented incident in his decision not to promote plaintiff." *Id.* at 1227. In *Griffith v. City of Des Moines*, 387 F.3d 733, 736 (8th Cir. 2004), cited by the *Fye* Court, direct evidence is explained as follows:

> "direct" refers to the causal strength of the proof, not whether it is "circumstantial" evidence. A plaintiff with strong (direct) evidence that illegal discrimination motivated the employer's adverse action does not need the three-part *McDonnell Douglas* analysis to get to the jury, regardless of whether his strong evidence is circumstantial. But if the plaintiff lacks evidence that clearly points to the presence of an illegal motive, he must avoid summary judgment by creating the requisite inference of unlawful discrimination through the *McDonnell Douglas* analysis, including sufficient evidence of pretext.

*Id.*; *see also Dorsey v. CHS, Inc.*, 15–cv–02735–RBJ, 2017 WL 1356093 at *5 (D. Colo. Apr. 13, 2017) (relying on the *Griffith* conceptualization of direct evidence). With this understanding, the Court finds Plaintiff has not provided adequate direct evidence and must instead rely on the burden shifting analysis set forth in *McDonnell Douglas*.

4

either by direct evidence of discrimination or retaliation, or by following the burden-shifting framework of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)." *Conroy v. Vilsack,* 707 F.3d 1163, 1171 (10th Cir. 2013). To satisfy the *McDonell Douglas* framework,

> the plaintiff must first establish a prima facie case of discrimination or retaliation. Then, the defendant may come forward with a legitimate, non-discriminatory or non-retaliatory rationale for the adverse employment action. If the defendant does so, the plaintiff must show that the defendant's proffered rationale is pretextual. This framework applies to both discrimination and retaliation claims.

*Id.* A plaintiff must make only a "*de minimis* showing" to establish a prima facie case of gender discrimination under the *McDonnell Douglas* framework. *Bird v. W. Valley City,* 832 F.3d 1188, 1200 (10th Cir. 2016). However, establishing pretext is more difficult. At the summary judgment stage, "summary judgment is warranted unless [Plaintiff] can show there is a genuine issue of material fact as to whether the proffered reasons are pretextual." *Id.* To establish pretext, a plaintiff must show that Defendant's "proffered non-discriminatory explanations for its actions are so incoherent, weak, inconsistent, or contradictory that a rational factfinder could conclude [they are] unworthy of belief." *Id.* at 1202. Timing and the sequence of events leading up to an adverse employment action may also serve as evidence of pretext. *Id.* at 1204. "The inquiry goes to the subjective belief of those making the termination decision; '[t]he relevant inquiry is not whether the employer's proffered reasons were wise, fair or correct, but whether it honestly believed

5

those reasons and acted in good faith upon those beliefs.'" *Hare v. Denver Merch. Mart, Inc.*, 255 F. Appx 298, 304 (10th Cir. 2007). Still, once a plaintiff establishes pretext, they need not prove discrimination as the real reason for the adverse action. *See id.* at 305 ("discriminatory animus may be inferred from the simple showing of pretext.")

The Court now turns to Defendant's first argument. Defendant contends Plaintiff cannot establish a prima facie case for her discrimination claim because she has not shown her demotion took place under circumstances giving rise to an inference of discrimination. The entirety of Defendant's briefing on this particular point is as follows:

> As part of her prima facie case for disparate treatment, Trooper Sanderson must show that her demotion "took place under circumstances giving rise to an inference of discrimination." *PVNF*, 487 F.3d at 800. For retaliation, Trooper Sanderson must show "a causal connection between the protected activity and the adverse action." *Medina*, 413 F.3d at 1136. Trooper Sanderson cannot produce evidence to support either claim. In the absence of a prima facie case, Highway Patrol is entitled to summary judgment on these claims. *Libertarian Party of N.M.*, 506 F.3d at 1309.

(ECF No. 31 at 9-10).

This conclusion is insufficient. *See Lints v. Graco Fluid Handlin (A) Inc.*, -- F.Supp.3d –, 2018 WL 4976567 at *8 (D. Utah Oct. 15, 2018); *see also* Fed. R. Civ. P. 56(c)(1) ("A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.") "It is not enough merely to mention a

6

possible argument in the most skeletal way, leaving the court to do counsel's work." *Cardoza-Estremera v. Berrios*, No. CV 16-2318 (ADC), 2017 WL 3098089, at *2 (D.P.R. July 20, 2017) (quoting *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990)); *see also New Mexico Off-Highway Vehicle All. v. U.S. Forest Serv.*, 645 F. Appx 795, 803 (10th Cir. 2016) (quoting *United States v. Dunkel,* 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs."); *United States v. Ibarra-Diaz*, 805 F.3d 908, 919 (10th Cir. 2015) ("Although Mr. Ibarra–Diaz invokes Rule 403 in a cursory fashion to argue that the statements were prejudicial, he never develops this line of argument or applies it to any specific statements. We will not craft such arguments for him." *See United States v. Yelloweagle,* 643 F.3d 1275, 1284 (10th Cir.2011) (noting that "[w]e cannot make arguments for" a party).)"

Even if the Court were to reach the 'merits' of Defendant's argument, it would be unavailing. "[A] prima facie case of discrimination must consist of evidence that (1) the victim belongs to a protected class; (2) the victim suffered an adverse employment action; and (3) the challenged action took place under circumstances giving rise to an inference of discrimination." *E.E.O.C. v. PVNF, L.L.C.*, 487 F.3d 790, 800 (10th Cir. 2007). The third element is in dispute in this case.

> Examples of circumstances that can give rise to an inference of discrimination include:
> [A]ctions or remarks made by decisionmakers that could be viewed as reflecting a discriminatory animus . . . , preferential treatment given to employees outside the protected class . . . , in a corporate downsizing, the systematic transfer of a discharged employee's duties to other employees . . . , or a pattern of recommending the plaintiff for positions for which she is not qualified [or over-qualified] and failure to surface plaintiff's name for positions for which she is well-qualified. A plaintiff might also rely upon the fact that the defendant, following plaintiff's termination, continued to seek

7

applicants to fill the position, . . . or, more generally, upon the time or sequence of events leading to plaintiff's termination.

*Lewis v. Twenty-First Century Bean Processing*, No. 2:15-CV-02322-JAR, 2015 WL 4774052, at *4 (D. Kan. Aug. 13, 2015), *aff'd*, 638 F. Appx 701 (10th Cir. 2016) (quoting *Plotke v. White,* 405 F.3d 1092, 1101 (10th Cir. 2005)). Plaintiff points to several instances of inferior (or inconsistent) treatment compared to male members of her division (ECF Nos. 36 at 4-5; 31-4 at 6-9; 36-1-36-6), rumors accusing her of engaging in sexual text messaging with a superior (ECF No. 36 at 4), and the timing of her demotion based upon prior incidents that had already been resolved according to Captain Stoker, a superior at the time (ECF No. 36-9 at 33). The primary incident referenced by the Highway Patrol is one in which Plaintiff told a trainer during a dog training exercise to "quit acting like an asshole" on February 18, 2016 (ECF No. 36 at 6). Plaintiff was strongly disciplined by a superior and told to apologize, which she did (*id.* at 9). An email written by the trainer defended Plaintiff, stating: "[w]hen Trooper Sanderson said it, I do not believe it was said with [sic] in a way meant to be derogatory, offensive, or insulting" and "[e]stablished social relationship [sic] that have evolved over time to a certain comfort level allow for suitable playful tongue in cheek bantering at the right time and place. I would, without hesitation say, that I share this status with Trooper Sanderson" (ECF No. 36-9 at 10).

Plaintiff also contends she was warned of hostility towards her selection to Division O because of her gender (ECF Nos. 36 at 4; 36-6 at 16), that none of her alleged wrong-doings were recorded in the human resources tracking system prior to her demotion (ECF Nos. 36 at 12; 36-2 at 29; 36-4), and that she was immediately replaced by a male (ECF No. 36 at 5). These facts, which the State does not dispute beyond asserting Plaintiff was

8

demoted for behavioral reasons, meets the threshold for a prima facie showing of element three. *See Bird v. W. Valley City*, 832 F.3d at 1200-1201 (10th Cir. 2016).

Defendant's retaliation argument is similarly conclusory. Nonetheless, given the Court's resolution of this claim as set forth below, further analysis is unwarranted and the Court will turn to the issue of pretext.

Plaintiff can establish pretext in either of two ways: (1) by showing the proffered reason is factually false or (2) by showing discrimination was a primary factor in the employer's decision, which can be shown by revealing "'weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer proffered reason[ ]," such that a reasonable fact finder could deem the employer's reason "unworthy of credence.'" *Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1218 (10th Cir. 2013) (quotations omitted). Defendant argues Plaintiff cannot show the reasons for her demotion were pretextual. "Even though all doubts concerning pretext must be resolved in plaintiff's favor, a plaintiff's allegations alone will not defeat summary judgment." *Jencks v. Modern Woodmen of Am.*, 479 F.3d 1261, 1267 (10th Cir. 2007). "In determining whether a plaintiff's evidence of pretext is sufficient to permit an inference of discrimination and thereby avoid summary judgment, the Supreme Court has noted relevant factors 'includ[ing] the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered' on a motion for summary judgment.'" *Swackhammer v. Sprint/United Mgmt. Co.*, 493 F.3d 1160, 1169 (10th Cir. 2007). Courts also grant summary judgment "for the employer based on the employer's own alternative, nondiscriminatory explanations, so long as they remain unrebutted and the employer's

credibility has not been so damaged as to render such explanations suspect." *Id.* Plaintiff is not required to establish all of Defendant's actions were pretextual but must only establish that there is a genuine factual dispute with regard to the truth. *Id.* at 1170. Again, a plaintiff may show this by "'weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions' in the employer's claimed legitimate, non-discriminatory reason such that a rational trier of fact could find the reason unworthy of belief." *Timmerman v. U.S. Bank, N.A.*, 483 F.3d 1106, 1113 (10th Cir. 2007).

Plaintiff has shown several inconsistencies or weaknesses in Defendant's explanations. Plaintiff argues, and Defendant concedes, that the HR tracking system used by the Highway Patrol lacked reports on most of Plaintiff's alleged behavioral incidents spanning over seven months at the time of her demotion (*see* ECF No. 36-2 at 29). According to Colonel Kebin Haller, when this came to his attention after Plaintiff's demotion "there was some urgency to go ahead and do that because it is part of [Highway Patrol's] system" (*id.*). This later documentation including changing "notes" into "actual memorand[a]" and dating and signing the memoranda by hand to correspond with the dates of the alleged incidents (ECF Nos. 36-2 at 29; 36-13). Plaintiff contends that several of these alleged incidents were never even brought to her attention and the record is disputed[3] (ECF No. 36-1 at 62-64). Defendant attributes this lack of proper documentation to

---

[3] Plaintiff provided a declaration identifying several alleged incidents she was not told of but were included in her reassignment letter. This includes the allegations that she "was not a team player on the K9 team," that she directed or restricted hide placement during training, that she was the subject of a complaint by a Jim Magagna, and that she told Lt. Scimone she was going to a training contrary to orders (ECF 36-1 at 62). Lt. George Nykun cannot recall whether he ever brought these incidents to Plaintiff's attention or not (ECF No. 36-4). Plaintiff further alleges that even when she was informed of allegations or complaints, she was given no opportunity to respond and no independent investigation was conducted. Plaintiff's superiors generally do not appear to deny this (*see generally* ECF Nos. 36-2; 36-4).

10

administrative error and unfamiliarity with the "system" but does not provide any further explanation (ECF No. 31 at 11).

Next, the incidents cited by Defendant in Plaintiff's reassignment letter occurred from June 2015 to February 2016 and from at least Plaintiff and Captain Stoker's perspectives, had been resolved (ECF No. 36-9 at 33). Defendant provided no explanation for this delay in discipline or what led from no significant discipline to immediate demotion. Further, "none of these incidents were mentioned in Sanderson's midterm evaluation. In fact, her immediate supervisor told her only a few weeks prior to the letter of expectations that "she was doing a great job" (ECF No. 1 ¶ 42; 36-4 at 11). Her demotion appears in stark contrast to the observations in her March 2016 evaluation that was signed in April:

> Trooper Sanderson's communication presented itself with an issue last month. Trooper Sanderson has been told to watch what she says and does due to her position in Division O. On February 19, 2016 Trooper Sanderson was in a training scenario with which she joked with Trainer Mark Rispoli in a K9 training saying he was acting like an "Asshole." This was her impression of how it was stated. I spoke with Trooper Sanderson about this issue on February 25, 2016 in which I again explained to her the importance of being professional at all times. With this problem being in the past Trooper Sanderson is focused on the future.
> Trooper Sanderson provided great customer service throughout the entire 2016 Session. . . .
> Trooper Sanderson has worked well with Division O during the 2016 Session.

(ECF No. 36-9 at 57-65). This is inconsistent with Defendant's argument that Plaintiff was engaging in a pattern of poor behavior and teamwork so extreme that she was not even

subjected to progressive discipline[4]. Defendant does not refute that this evaluation occurred or was positive.

Finally, Plaintiff was not subject to any progressive discipline (*see id.* ¶ 40). Defendant agrees but argues this was an appropriate decision given Plaintiff's pattern of behavior (ECF No. 31-2 at 154). This appears highly inconsistent with her evaluation only weeks earlier and the progressive discipline afforded Division O male troopers during the relevant time frame. Moreover, many items in this pattern were never brought up with Plaintiff and contrary to Highway Patrol policy were not entered into the "system" until after her demotion. Viewing the evidence in the light most favorable to the non-moving party, Plaintiff has raised a genuine dispute of material fact as to whether Defendant's proffered reasons for demoting her were unworthy of credence.

Turning back to Plaintiff's retaliation claim. Defendant argues that Plaintiff failed to exhaust her administrative remedies on her retaliation claim. The Court agrees. Title VII claims must be administratively exhausted before being brought in federal court. *Noland v. City of Albuquerque*, 779 F. Supp. 2d 1214, 1221 (D.N.M. 2011) (citing *Shikles v. Sprint/United Mgmt. Co.*, 426 F.3d 1304, 1317 (10th Cir. 2005)). "The exhaustion rule derives from two principal purposes: 1) to give notice of the alleged violation to the charged party; and 2) to give the EEOC an opportunity to conciliate the claim, which effectuates Title VII's goal of securing voluntary compliance." *Smith v. Cheyenne Ret.*

---

[4] In contrast, a number of Division O male troopers received progressive discipline for significant incidents. These include a trooper receiving a reprimand for racial comments in a CPR class with public complaints (ECF No. 36-14 at 1); that same trooper taking embarrassing photographs of legislators and disseminating them via cell phone and simply being told "don't do that anymore" (ECF No. 36-7 at 2); another trooper being reprimanded for keeping seized marijuana in the trunk of his patrol car for several months (ECF No. 36-14 at 5); and a male trooper being reassigned for failing to train an assigned K9 after several letters of reprimand for failing to train and inappropriately disciplining the dog (*id.* at 8).

*Inv'rs L.P.*, 904 F.3d 1159, 1164 (10th Cir. 2018) (internal quotations omitted). "A plaintiff's claim in federal court is generally limited by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination submitted to the EEOC." *MacKenzie v. City & County of Denver,* 414 F.3d 1266, 1274 (10th Cir. 2005). The Court will "liberally construe charges filed with the EEOC in determining whether administrative remedies have been exhausted as to a particular claim. This more lenient pleading standard contemplates the fact that administrative charges of unlawful employment practices are regularly filled out by employees who do not have the benefit of counsel." *Noland*, 779 F. Supp. 2d at 1223. "[L]iberal construction in this context means construing the charge to embrace the *legal theories* that can reasonably be discerned from the *facts alleged."* *Reveles v. Catholic Health Initiatives*, No. 16-CV-2561-WJM-CBS, 2017 WL 2672112, at *7 (D. Colo. June 21, 2017). However, "each discrete incident of alleged discrimination or retaliation constitutes its own unlawful employment practice for which administrative remedies must be exhausted." *Jones v. U.P.S., Inc.*, 502 F.3d 1176, 1186 (10th Cir. 2007) (internal quotations omitted). "The ultimate question is whether the conduct alleged [in the lawsuit] would fall within the scope of an EEOC investigation which would reasonably grow out of the charges actually made [in the EEOC charge]." *Smith*, 904 F.3d at 1164.

In Plaintiff's EEOC charge of discrimination, her accusation of retaliation was:

> 7. I engaged in what in good faith I believed to be protected activity under Title VII;
> a. I informed my employer I was withdrawing my grievance and filling an EEO complaint.
> 8. Subsequent to my protected activity I received a needs improvement score on my annual evaluation for poor judgment as a means of continuing the harassment against me.

(ECF No. 31-3). In her complaint, Plaintiff's retaliation claim is not based on this conduct. Instead she alleges the protected activity was "complain[ing] to Capt. Thomas and her Division O supervisors about unequal treatment" and the adverse action was being disciplined and reassigned. These are two discrete allegations of retaliation and Defendant was not put on notice of Plaintiff's claim that her demotion was retaliatory. *See Apsley v. Boeing Co.*, 691 F.3d 1184, 1210 (10th Cir. 2012); *Martinez v. Target Corp.*, 384 F. Appx 840, 845 (10th Cir. 2010). Plaintiff's original October 27, 2016 EEOC charge does not provide facts to support a legal theory of retaliation based on Plaintiff's complaints of unequal treatment prior to her demotion. In fact, in the EEOC charge, Plaintiff does not mention any complaint to supervisors regarding her purported unequal treatment until AFTER her demotion and filing of a grievance (ECF No. 31-3). *See Smith*, 904 F.3d at 1166 (finding in order to exhaust, a claim must fall within the reasonable and likely scope of EEOC investigation as determined by the allegations contained in the charge of discrimination itself). At oral argument, Plaintiff urged the Court to consider the Defendant's position statement in response to the EEOC charge and Plaintiff's reply to conclude Plaintiff's complaints prior to her demotion are within the investigation scope. The Tenth Circuit has conclusively rejected this argument,

> Recognizing that the 2014 EEOC Charge, on its face, does not reference the 2012 EEOC Charge, Ms. Smith urges us to consider Pointe Frontier's response, which does, in passing, mention the 2012 EEOC Charge.
> . . .
> This argument has a certain appeal. After all, the test is whether the claim Ms. Smith now brings in federal court was within the scope of the administrative investigation that would "reasonably be expected to follow from the discriminatory acts alleged in the administrative charge." One might expect, given the reference to the 2012 EEOC Charge in Pointe Frontier's response, that the EEOC investigation into the allegations

> contained in the 2014 EEOC Charge would have included inquiry into the 2012 EEOC Charge, and whether any of the adverse employment actions Ms. Smith suffered can be traced back to her decision to file that complaint with the EEOC.
>
> But we have consistently held, time and again, that the reasonable and likely scope of the investigation is determined by the allegations contained in the <u>Charge</u> itself, rather than in the Charge and any responsive documents.
> . . .
> And there is good reason for this requirement. After all, the twin purposes of the exhaustion requirement would be ill-served if an employer's response could expand the scope of the EEOC inquiry.

*Id.* at 1165–66 (internal citations omitted).

The basis of Plaintiff's claim of retaliation set forth in her complaint does not fall within the reasonable and likely scope of any investigation based upon her EEOC charge. Thus, Plaintiff has not exhausted her administrative remedies as to this new theory of retaliation and her retaliation claim must be dismissed without prejudice. *Id.* at 1166 (finding resolution of a claim based on exhaustion is not a merit-based rejection of the claim and dismissal without prejudice is the proper disposition).

Finally, turning to Plaintiff's hostile work environment claim. Defendant asserts Plaintiff cannot establish her claim for hostile environment because she cannot show she was subject to severe or pervasive harassment based on her sex. The Tenth Circuit has set forth the required showing:

> To prevail on her hostile work environment claim under Title VII, Plaintiff must "show that a rational jury could find that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment." *Herrera v. Lufkin Indus., Inc.*, 474 F.3d 675, 680 (10th Cir. 2007). "But severity and pervasiveness are not enough." *Chavez v. New Mexico*, 397 F.3d 826, 833 (10th Cir. 2005). Plaintiff must demonstrate "severe and pervasive harassment *based on gender*." *Id.* (emphasis added).

*Bird*, 832 F.3d at 1205. "Facially neutral abusive conduct can support a finding of gender animus sufficient to sustain a hostile work environment claim when that conduct is viewed in the context of other, overtly gender-discriminatory conduct." *O'Shea v. Yellow Tech. Servs., Inc.*, 185 F.3d 1093, 1097 (10th Cir. 1999). Further, "[a]busive conduct that is either severe *or* pervasive is actionable; it does not have to be both." *Morris v. City of Colorado Springs*, 666 F.3d 654, 665 (10th Cir. 2012) (noting, however, that frequency is still one consideration in the case of severe incident); *see also Brown v. LaFerry's LP Gas Co.*, 708 F. App'x 518, 521 (10th Cir. 2017) ("'[P]ervasiveness and severity are independent and equal grounds' upon which a plaintiff may establish an objectively hostile or abusive work environment, though these two grounds 'are, to a certain degree, inversely related; a sufficiently severe episode may occur as rarely as once, while a relentless pattern of lesser harassment that extends over a long period of time also violates the statute.'"); *Grove v. Builders Tr. of New Mexico*, No. CV 13-00001 JCH/KBM, 2015 WL 13665431, at *13 (D.N.M. Mar. 2, 2015) (noting "even an isolated incident can satisfy the forth prong if sufficiently severe.") A plaintiff must show that the environment was both objectively and subjectively hostile or abusive. *Morris*, 666 F.3d 654 at 664. This Court:

> must look to a "totality of the circumstances," and "consider[ ] such factors as 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Chavez v. New Mexico,* 397 F.3d 826, 832–33 (10th Cir.2005) (quoting *O'Shea v. Yellow Tech. Servs., Inc.,* 185 F.3d 1093, 1098 (10th Cir.1999)); *accord Billings v. Town of Grafton,* 515 F.3d 39, 48 (1st Cir.2008).

*Id.* at 664. In evaluating the objective component, the court must consider the context and setting in which the behavior occurs. *Id.*

Defendant contends Plaintiff cannot establish that she was subject to severe or pervasive harassment based on her sex. Specifically, Defendant argues: (1) rumors about sexual text messages between Plaintiff and a superior, the matter referenced by Plaintiff in her deposition, were not severe or pervasive and (2) any claims of harassment prior to her time on Division O have not been administratively exhausted. At oral argument Defendant expanded upon this argument to more generally allege the acts cited by Plaintiff are not sufficiently severe or pervasive. The Court agrees.

Although the comments made to Plaintiff were insensitive and inappropriate, occasional fleeting rumors of Plaintiff using her sexuality to advance her career or calling Plaintiff promiscuous, one reference to douching, and generally unfriendly behavior is insufficient to establish a hostile work environment claim. *See Morris*, 66 F.3d at 667 (noting isolated incident of sexual assault sufficiently severe but isolated comments and touchings are not); *Kline v. Utah Anti-Discrimination & Labor Div.*, 418 F. App'x 774, 781 (10th Cir. 2011) (finding two inappropriate sexual comments to Plaintiff, sexual comments she overheard, unduly harsh work evaluations, among other behavior insufficient); *Juarez v. Utah*, 263 F. App'x 726, 739 (10th Cir. 2008) (noting "there must be a steady barrage of opprobrious racial [or sexual] comments"); *Sprague v. Thorn Americas, Inc.*, 129 F.3d 1355, 1366 (10th Cir. 1997) (finding telling female employee to undo her top button, comments about women and PMS, looking down female's dress, and other behavior insufficient).

Drawing all reasonable inferences in favor of Plaintiff, *EEOC v. PVNF, LLC*, 487 F.3d 790, 797 (10th Cir.2007), based upon the evidence in the record before this court, a reasonable jury could not determine Plaintiff experienced a hostile work environment due to sexual discrimination. *See Morris v. City of Colorado Springs*, 666 F.3d 654, 669 (10th Cir. 2012). Thus, Defendant is entitled to summary judgment on Plaintiff's hostile work environment claim.

## CONCLUSION

In light of the foregoing, the Court finds Defendant's motion must be granted in part and denied in part. Therefore, it is hereby:

ORDERED that *Defendant's Motion for Summary Judgment* (ECF No. 30) is GRANTED IN PART and the retaliation claim (claim three) is dismissed without prejudice; it is

FURTHER ORDERED that *Defendant's Motion for Summary Judgment* (ECF No. 30) is GRANTED IN PART as to the hostile environment claim (claim two); it is

FURTHER ORDERED that *Defendant's Motion for Summary Judgment* (ECF No. 30) is DENIED IN PART and the sex discrimination claim (claim one) remains.

Dated this  5th  day of December 2018.

Scott W. Skavdahl
United States District Judge